CHRISTINA VACCARO      *     IN THE

P.O. Box 261      *

Mount Airy, MD 21771      *     UNITED STATES

     *

       Plaintiff      *     DISTRICT COURT

     *

       v.      *     FOR THE DISTRICT

     *

MONTE NIDO ROXBURY MILLS      *     OF MARYLAND

3100 NW      *

Roxbury Mills Road      *

Glenwood, Maryland 21738      *

     *

   Serve on:      *

     *

The Corporation Trust Incorporated      *

2405 York Road      *

Suite 201      *

Lutherville-Timonium, Maryland 21093      *

     *

       Defendant.      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT

**COMES NOW,** Christina Vaccaro, by and through her attorneys, Paul V. Bennett, Esq. and Bennett & Ellison, P.C., and hereby sues Monte Nido Roxbury Mills (hereinafter "Monte Nido"), Defendant, and states as follows:

## JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to MD. Code Ann., State Gov't § 20-1013 (2018) (hereinafter "Maryland Code").

2. This court has jurisdiction pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* (2018) ("ADA").

3. That all the actions complained of herein took place in Maryland.

4. That at all times relevant hereto, Christina Vaccaro, Plaintiff, was an employee of the Defendant in Maryland.

5. That at all times relevant hereto, Defendant Monte Nido is an eating disorder treatment center headquartered in Howard County, Maryland and employed twenty (20) or more persons, and is thus an "employer" within the meaning of the Maryland Code and the ADA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On February 4, 2020, Plaintiff submitted a Charge of Discrimination with the Maryland Commission on Civil Rights against Defendant and cross-filed with the U.S. Equal Employment Opportunity Commission. After more than 180 days since filing, Plaintiff received the Notice of Right to Sue from the EEOC Philadelphia District Office on April 26, 2021. Therefore, Plaintiff has properly exhausted her administrative remedies and this complaint has been filed in a timely manner.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff has a disability (premature ventricular contractions), which causes chest pain and adversely affects her driving, working, and thinking and concentrating.

8. On or about August 21, 2019, Plaintiff began working at Monte Nido Roxbury Mills (Monte Nido) as a Licensed Practical Nurse ("LPN").

9. Plaintiff's job duties as a Licensed Practical Nurse included, but was not limited to patient care (including administering medication to patients, checking patients' vital signs, preparing lab orders for patients, eating with patients, observing patients during her shifts, and counseling patients regarding complaints or feelings of pain or distress), filing, organizing, keeping inventory of medications, faxing medication orders to pharmacies, and responding to emergency situations regarding patient care.

10. Plaintiff satisfied the normal requirements for her position as a Licensed Practical Nurse. Plaintiff received good performance reviews and was never placed on a performance

improvement plan. Plaintiff was never written up for poor performance.

11. Charity Accacio (Non-disabled) employed by Defendant as a Nurse Manager, served as Plaintiff's supervisor from August 21, 2019 until December 3, 2019.

12. Upon being hired by Defendant, Ms. Accacio advised Plaintiff that Plaintiff would not be kept on the night shift for long, and that she intended to have Plaintiff aid her during her daytime shift and during the evening.

13. Plaintiff was scheduled to work three twelve-hour shifts between Monday through Thursday. Additionally, she worked one weekend per month, either on a Friday night or a Saturday night.

14. Around early October 2019, Ms. Accacio failed to relieve Plaintiff the morning after Plaintiff's night shift during the weekend, despite Plaintiff's numerous calls and texts to her. Ms. Accacio told her over the phone that she would come in to relieve her, but Ms. Accacio did not relieve her, and did not arrange for another nurse to replace Plaintiff so Plaintiff could leave. Plaintiff had been awake all night and did not feel safe engaging in patient care, but Ms. Accacio failed to aid Plaintiff; she simply told Plaintiff over the phone to sleep in a private room. Plaintiff did not sleep in a private room because she did not feel comfortable sleeping while her patients were awake.

15. Around October 9, 2019, Plaintiff went to the Emergency Room and was diagnosed with sleep deprivation, severe dehydration, intermittent/intermediate dizziness, intermittent/intermediate chest pain, and intermittent/intermediate heart palpitations. Plaintiff's electrocardiogram (EKG, which tested for heart conditions) was also found to be abnormal. Plaintiff was told to follow up with a cardiologist, and the cardiologist diagnosed her with premature ventricular contractions and intermittent/intermediate heart palpitations.

Plaintiff both contacted and submitted paperwork to the human resource department for Monte Nido and Ms. Accacio regarding her condition.

16. In October 2019, during her medical leave, Plaintiff received a level 3 ankle sprain that prevented her from standing functionally for over one month. Plaintiff went to the Emergency Room and received crutches due to her injury. She later received a walking boot for her ankle sprain.

17. Plaintiff's injuries substantially limited her ability to perform major life activities, including driving, working, sleeping, and thinking and concentrating.

18. From on or about October 9, 2019 to November 18, 2019, Plaintiff was on approved medical leave due to her health issues.

19. From on or about November 8, 2019 to on or about November 18, 2019, Plaintiff attempted to return to work numerous times. However, the human resource department for Monte Nido denied her reasonable accommodation requests for a lighter workload and did not allow her to work while using crutches.

20. Around November 2019, Ms. Accacio hired outside nursing agencies and received help from the nurses who worked for these agencies because she needed assistance in the workplace, for several of Defendants' PRN (pro re nata) nurses did not want to work during the night shift. These PRN nurses were required to work a certain number of hours per week/month.

21. From on or about November 18, 2019 to on or about December 3, 2019, Ms. Accacio continuously subjected Plaintiff to disability-related harassment. Ms. Accacio significantly reduced Plaintiff's work hours; gave scheduling preferences to other non-disabled nurses; denied Plaintiff numerous opportunities to work overtime; spoke to her in a hostile manner when Plaintiff asked work-related questions; and constantly harassed and ridiculed Plaintiff

with inappropriate comments about having to provide coverage for patients while Plaintiff
was on medical leave due to her disability-related health issues, such as "You have no idea
how tired I am and how much I had to cover for you when you were out," "I went to visit my
dad out of state, and I ended up having to come back early because I had no coverage," and
"My kids are mad at me. I never see them anymore. I'm overworked and nobody will ever
pick up the night shift, so I had to be the one to cover for you." Plaintiff apologized to Ms.
Accacio numerous times when Ms. Accacio complained about the time Plaintiff spent on
medical leave.

22. In November 2019, Ms. Accacio kept Plaintiff from working on the schedule she had worked
before taking medical leave and made her work at different times. Ms. Accacio frequently
scheduled nurses who were non-disabled, such as Gifty Nkromah (Non-disabled), more and
favorable hours compared to that which Plaintiff was scheduled.

23. Numerous nursing staff told Plaintiff that Ms. Accacio was angry that Plaintiff had been
absent due to her medical leave.

24. In November 2019, Ms. Accacio spoke and behaved aggressively towards Plaintiff about a
patient's paperwork. During this confrontation, Ms. Accacio slammed both medical charts
and the printer down in a hostile manner. Plaintiff's coworker Walkidia Fradera (Non-
disabled) witnessed the event and later told Plaintiff "It's ok, Christina. It's not your fault. I
don't know why she's treating you so badly."

25. Plaintiff's fellow Licensed Practical Nurse Ana Dave (Non-disabled), and nurse Gifty
Nkromah, who both shared Ms. Accacio as their supervisor, were not harassed and ridiculed
by Ms. Accacio as Plaintiff was.

26. On or about November 25, 2019, Plaintiff reported the harassment she suffered from Ms.

Accacio to Defendant's human resources department and to the Maryland Department of Labor.

27. On or about November 26, 2019, Defendant placed Plaintiff on a disciplinary suspension. However, Plaintiff was not informed why she had been suspended. Plaintiff contacted Ms. Accacio and the human resource department about the issue, but no one told her exactly why she had been suspended.

28. On or around November 26, 2019, Plaintiff spoke with the human resource department, including Wendy Mayle (Non-disabled) about the reason for her suspension. Plaintiff was informed that she was suspended for an alleged performance issue concerning Plaintiff's calculation and administration of a medication. However, Plaintiff was not responsible for the calculation and administration of the medication she was accused of mishandling. During the conversation, Plaintiff made the human resource department aware of Ms. Accacio's anger issues concerning the medical leave she had taken in October and November 2019. The human resource department made it clear to Plaintiff that an investigation was underway concerning the conduct Plaintiff was accused of. The human resource department did not assure Plaintiff that her complaints would be investigated.

29. Due to the ongoing harassment and discrimination and failure of the human resource department to address her complaints, Plaintiff felt she had no other viable option but to resign from her position, which she did on or around December 3, 2019.

## COUNT I
## DISABILITY DISCRIMINATION
### (Disparate Treatment)
### Annotated Code of Maryland
### State Government Article, § 20-606

30. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

31. Maryland Law prohibits employment discrimination against otherwise qualified individuals with disabilities based on those disabilities.

32. From on or about November 18, 2019 to on or about December 3, 2019, Ms. Accacio continuously subjected Plaintiff to disability-related harassment. Ms. Accacio significantly reduced Plaintiff's work hours; gave scheduling preferences to other non-disabled nurses; denied Plaintiff numerous opportunities to work overtime; was hostile towards her when Plaintiff asked work-related questions; and constantly harassed and ridiculed Plaintiff with inappropriate comments about having to provide coverage for patients while Plaintiff was on medical leave due to her disability-related health issues, such as "You have no idea how tired I am and how much I had to cover for you when you were out," "I went to visit my dad out of state, and I ended up having to come back early because I had no coverage," and "My kids are mad at me. I never see them anymore. I'm overworked and nobody will ever pick up the night shift, so I had to be the one to cover for you."

33. In November 2019, Ms. Accacio kept Plaintiff from working on the schedule she had worked before taking medical leave and made her work at different times. Ms. Accacio frequently scheduled nurses who were non-disabled, such as Gifty Nkromah (Non-disabled), more and favorable hours compared to that which Plaintiff was scheduled.

34. In November 2019, Ms. Accacio spoke and behaved aggressively towards Plaintiff about a

patient's paperwork; during this confrontation, Ms. Accacio slammed both medical charts and the printer down in a hostile manner. Plaintiff's coworker Walkidia Fradera (Non-disabled) witnessed the event and later told Plaintiff "It's ok, Christina. It's not your fault. I don't know why she's treating you so badly."

35. That Plaintiff was similarly situated to Licensed Practical Nurse Ana Dave (Non-disabled) and Nurse Gifty Nkromah in that they had Ms. Accacio as their supervisor.

36. That Plaintiff was discriminated against in employment based on her disability, when she was treated less favorably than similarly situated non-disabled employees, including, but not limited to, Nurse Ana Dave and Nurse Gifty Nkromah, who were not subjected to the aforementioned acts of discrimination, including but not limited to: harassment, unwanted changes in her work schedule, and the reassignment of her work shifts to other nurses. A motivating factor for taking the aforementioned adverse job actions against Plaintiff was because of her disability.

37. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her disabilities (sleep deprivation, severe dehydration, intermittent/intermediate dizziness, intermittent/intermediate chest pain, intermittent/intermediate heart palpitations, an abnormal EKG, a level 3 ankle sprain, and premature ventricular contractions)- protected disabilities under Maryland law.

38. That Plaintiff was qualified for the position she held and performed her job duties at a level that met or exceeded Defendant's legitimate expectations.

39. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

40. That the circumstances surrounding the adverse actions gave rise to the inference of discrimination.

41. That the intentional discriminatory actions complained of above were done with malice and/or reckless indifference to Plaintiff's rights.

42. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered lost wages, emotional and physical pain, mental anguish, humiliation, fear of further harassment and retaliation, inconvenience, and anxiety.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**DISABILITY DISCRIMINATION**
**(Disparate Treatment)**
**Americans with Disabilities Act of 1990, as amended**
**42 U.S.C. § 12101,** *et seq.*

43. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

44. The ADA prohibits employment discrimination against otherwise qualified individuals with disabilities based on those disabilities.

45. From on or about November 18, 2019 to on or about December 3, 2019, Ms. Accacio continuously subjected Plaintiff to disability-related harassment. Ms. Accacio significantly reduced Plaintiff's work hours; gave scheduling preferences to other non-disabled nurses; denied Plaintiff numerous opportunities to work overtime; spoke to her in a hostile manner when Plaintiff asked work-related questions; and constantly harassed and ridiculed Plaintiff with inappropriate comments about having to provide coverage for patients while Plaintiff was on medical leave due to her disability-related health issues, such as "You have no idea how tired I am and how much I had to cover for you when you were out," "I went to visit my

dad out of state, and I ended up having to come back early because I had no coverage," and "My kids are mad at me. I never see them anymore. I'm overworked and nobody will ever pick up the night shift, so I had to be the one to cover for you."

46. In November 2019, Ms. Accacio kept Plaintiff from working on the schedule she had worked before taking medical leave and made her work at different times. Ms. Accacio frequently scheduled nurses who were non-disabled, such as Gifty Nkromah (Non-disabled), more and favorable hours compared to that which Plaintiff was scheduled.

47. In November 2019, Ms. Accacio spoke and behaved aggressively toward Plaintiff about a patient's paperwork; during this confrontation, Ms. Accacio slammed both medical charts and the printer down in a hostile manner. Plaintiff's coworker Walkidia Fradera (Non-disabled) witnessed the event and later told Plaintiff "It's ok, Christina. It's not your fault. I don't know why she's treating you so badly."

48. That Plaintiff was similarly situated to Licensed Practical Nurse Ana Dave (Non-disabled) and Gifty Nkromah in that they had Ms. Accacio as their supervisor.

49. That Plaintiff was discriminated against in employment based on her disability, when she was treated less favorably than similarly situated non-disabled employees, including, but not limited to, Nurse Ana Dave and Gifty Nkromah, who were not subjected to the aforementioned acts of discrimination, including but not limited to: harassment, unwanted changes in her work schedule, and the reassignment of her work shifts to other nurses. A motivating factor for taking the aforementioned adverse job actions against Plaintiff was because of her disability.

50. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her disabilities (sleep deprivation, severe dehydration, intermittent/intermediate

dizziness, intermittent/intermediate chest pain, intermittent/intermediate heart palpitations, an abnormal EKG, a level 3 ankle sprain, and premature ventricular contractions)- protected disabilities under the ADA.

51. That Plaintiff was qualified for the position she held and performed her job duties at a level that met or exceeded Defendant's legitimate expectations.

52. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

53. That the circumstances surrounding the adverse actions gave rise to the inference of discrimination.

54. That the intentional discriminatory actions complained of above were done with malice and/or reckless indifference to Plaintiff's rights.

55. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered lost wages, emotional and physical pain, mental anguish, humiliation, fear of further harassment and retaliation, inconvenience, and anxiety.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT III**
**DISABILITY DISCRIMINATION**
**(Failure to Accommodate)**
**Annotated Code of Maryland**
**State Government Article, § 20-606**

56. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

57. Maryland law prohibits employment discrimination against otherwise qualified employees with disabilities based on those disabilities.

11

58. Maryland law requires an employer to provide reasonable accommodation for individuals with disabilities, unless it would cause undue hardship.

59. From on or about November 8, 2019 to on or about November 18, 2019, Plaintiff attempted to return to work numerous times. However, the human resource department denied her reasonable accommodation requests for a lighter workload and did not allow her to work while using crutches.

60. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her disabilities (sleep deprivation, severe dehydration, intermittent/intermediate dizziness, intermittent/intermediate chest pain, intermittent/intermediate heart palpitations, an abnormal EKG, a level 3 ankle sprain, and premature ventricular contractions)- protected disabilities under Maryland law.

61. That Plaintiff was qualified for the position she held and performed her job duties at a level that met or exceeded Defendant's legitimate expectations.

62. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

63. That the circumstances surrounding the adverse actions gave rise to the inference of discrimination.

64. That the intentional discriminatory actions complained of above were done with malice and/or reckless indifference to Plaintiff's rights.

65. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered lost wages, emotional and physical pain, mental anguish, humiliation, fear of further harassment and retaliation, inconvenience, and anxiety.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

COUNT IV
DISABILITY DISCRIMINATION
(Failure to Accommodate)
**Americans with Disabilities Act of 1990, as amended**
**42 U.S.C. § 12101, *et seq.***

66. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

67. The ADA prohibits employment discrimination against otherwise qualified employees with disabilities based on those disabilities.

68. The ADA requires an employer to provide reasonable accommodation for individuals with disabilities, unless it would cause undue hardship.

69. From on or about November 8, 2019 to on or about November 18, 2019, Plaintiff attempted to return to work numerous times. However, the human resource department denied her reasonable accommodation requests for a lighter workload and did not allow her to work while using crutches.

70. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her disabilities (sleep deprivation, severe dehydration, intermittent/intermediate dizziness, intermittent/intermediate chest pain, intermittent/intermediate heart palpitations, an abnormal EKG, a level 3 ankle sprain, and premature ventricular contractions)- protected disabilities under the ADA.

71. That Plaintiff was qualified for the position she held and performed her job duties at a level that met or exceeded Defendant's legitimate expectations.

72. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because

of her disability.

73. That the circumstances surrounding the adverse actions gave rise to the inference of discrimination.

74. That the intentional discriminatory actions complained of above were done with malice and/or reckless indifference to Plaintiff's rights.

75. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered lost wages, emotional and physical pain, mental anguish, humiliation, fear of further harassment and retaliation, inconvenience, and anxiety.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT V
### HOSTILE WORK ENVIRONMENT
(Disability)
Annotated Code of Maryland
State Government Article, § 20-606

76. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

77. From on or about November 18, 2019 to on or about December 3, 2019, Ms. Accacio continuously subjected Plaintiff to disability-related harassment. Ms. Accacio significantly reduced Plaintiff's work hours; gave scheduling preferences to other non-disabled nurses; denied Plaintiff numerous opportunities to work overtime; spoke to her in a hostile manner when Plaintiff asked work-related questions; and constantly harassed and ridiculed Plaintiff with inappropriate comments about having to provide coverage for patients while Plaintiff was on medical leave due to her disability-related health issues, such as "You have no idea how tired I am and how much I had to cover for you when you were out," "I went to visit my dad out of state, and I ended up having to come back early because I had no coverage," and

"My kids are mad at me. I never see them anymore. I'm overworked and nobody will ever pick up the night shift, so I had to be the one to cover for you."

78. In November 2019, Ms. Accacio kept Plaintiff from working on the schedule she had worked before taking medical leave and made her work at different times. Ms. Accacio frequently scheduled nurses who were non-disabled, such as Gifty Nkromah (Non-disabled), more and favorable hours compared to that which Plaintiff was scheduled.

79. In November 2019, Ms. Accacio spoke and behaved aggressively towards Plaintiff about a patient's paperwork; during this confrontation, Ms. Accacio slammed both medical charts and the printer down in a hostile manner. Plaintiff's coworker Walkidia Fradera (Non-disabled) witnessed the event and later told Plaintiff "It's ok, Christina. It's not your fault. I don't know why she's treating you so badly."

80. On or about November 25, 2019, Plaintiff reported the harassment she suffered from Ms. Accacio to Defendant's human resources department and to the Maryland Department of Labor.

81. Plaintiff's complaints of hostile work environment were not resolved in Plaintiff's favor.

82. The aforementioned acts constitute unlawful practices pursuant to Maryland law.

83. The effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect Plaintiff's status as an employee because of her disability.

84. That the unlawful employment practices complained of above were intentional, unwelcome, and personally hostile and offensive to Plaintiff.

85. That the aforementioned conduct of Defendant and its supervisory employees was sufficiently severe and/or pervasive so as to alter the terms and conditions of Plaintiff s

employment and to create an intimidating, hostile, and offensive working environment for Plaintiff.

86. That the aforementioned conduct of the Defendant, as set forth above, has caused and will continue to cause Plaintiff to suffer lost wages, severe emotional distress, physical pain, mental anguish, humiliation, fear of further harassment and retaliation, inconvenience, and anxiety.

87. That the aforementioned conduct of the Defendant and their supervisory employees against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiffs rights.

88. That Defendant knew or should have known of the aforementioned conduct of their supervisory employees against Plaintiff and failed to take prompt corrective action.

89. That Defendant is vicariously liable for the conduct of their supervisory employees carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT VI
## HOSTILE WORK ENVIRONMENT
### (Disability)
### Americans with Disabilities Act of 1990, as amended
### 42 U.S.C. § 12101, *et seq.*

90. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

91. From on or about November 18, 2019 to on or about December 3, 2019, Ms. Accacio continuously subjected Plaintiff to disability-related harassment. Ms. Accacio significantly reduced Plaintiff's work hours; gave scheduling preferences to other non-disabled nurses; denied Plaintiff numerous opportunities to work overtime; spoke to her in a hostile manner

when Plaintiff asked work-related questions; and constantly harassed and ridiculed Plaintiff with inappropriate comments about having to provide coverage for patients while Plaintiff was on medical leave due to her disability-related health issues, such as "You have no idea how tired I am and how much I had to cover for you when you were out," "I went to visit my dad out of state, and I ended up having to come back early because I had no coverage," and "My kids are mad at me. I never see them anymore. I'm overworked and nobody will ever pick up the night shift, so I had to be the one to cover for you."

92. In November 2019, Ms. Accacio kept Plaintiff from working on the schedule she had worked before taking medical leave and made her work at different times. Ms. Accacio frequently scheduled nurses who were non-disabled, such as Gifty Nkromah (Non-disabled), more and favorable hours compared to that which Plaintiff was scheduled.

93. In November 2019, Ms. Accacio spoke and behaved aggressively towards Plaintiff about a patient's paperwork; during this confrontation, Ms. Accacio slammed both medical charts and the printer down in a hostile manner. Plaintiff's coworker Walkidia Fradera (Non-disabled) witnessed the event and later told Plaintiff "It's ok, Christina. It's not your fault. I don't know why she's treating you so badly."

94. On or about November 25, 2019, Plaintiff reported the harassment she suffered from Ms. Accacio to Defendant's human resources department and to the Maryland Department of Labor.

95. Plaintiff's complaints of hostile work environment were not resolved in Plaintiff's favor.

96. The aforementioned acts constitute unlawful practices pursuant to the ADA.

97. The effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect Plaintiff's status as an employee because of her

disability.

98. That the unlawful employment practices complained of above were intentional, unwelcome, and personally hostile and offensive to Plaintiff.

99. That the aforementioned conduct of Defendant and its supervisory employees was sufficiently severe and/or pervasive so as to alter the terms and conditions of Plaintiff s employment and to create an intimidating, hostile, and offensive working environment for Plaintiff.

100. That the aforementioned conduct of the Defendant, as set forth above, has caused and will continue to cause Plaintiff to suffer lost wages, severe emotional distress, physical pain, mental anguish, humiliation, fear of further harassment and retaliation, inconvenience, and anxiety.

101. That the aforementioned conduct of the Defendant and their supervisory employees against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiffs rights.

102. That Defendant knew or should have known of the aforementioned conduct of their supervisory employees against Plaintiff and failed to take prompt corrective action.

103. That Defendant is vicariously liable for the conduct of their supervisory employees carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT VII
## RETALIATION
### (Adverse Actions and Protected Activity Deterrents)
### Annotated Code of Maryland
### State Government Article, § 20-606

104.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

105.   From on or about November 18, 2019 to December 3, 2019, Plaintiff was harassed by Ms. Accacio in various ways. Ms. Accacio significantly reduced Plaintiff's work hours; gave scheduling preferences to other non-disabled nurses; denied Plaintiff numerous opportunities to work overtime; spoke to her in a hostile manner when Plaintiff asked work-related questions; and constantly harassed and ridiculed Plaintiff with inappropriate comments about having to provide coverage for patients while Plaintiff was on medical leave due to her disability-related health issues

106.   On or about November 25, 2019, Plaintiff reported the harassment she suffered from Ms. Accacio to Defendant's human resources department and to the Maryland Department of Labor.

107.   On or about November 26, 2019, Defendant placed Plaintiff on a disciplinary suspension. However, Plaintiff was not advised why she had been suspended. Plaintiff contacted Ms. Accacio and the human resource department about the issue, but no one told her exactly why she had been suspended.

108.   Between November 26, 2019 and December 3, 2019, Plaintiff spoke with the human resource department, including Wendy Mayle (Non-disabled) about the reason for her suspension. Plaintiff was informed that she was suspended for an alleged performance issue concerning Plaintiff's calculation and administration of a medication. However, Plaintiff was

not responsible for the calculation and administration of the medication she was accused of mishandling. The human resource department made it clear to Plaintiff that an investigation was underway concerning the conduct Plaintiff was accused of.

109.   The subsequent hostile work environment, disciplinary suspension, among other actions as set forth in the above-referenced facts common to all counts amounted to illegal retaliation.

110.   That the aforementioned acts of retaliation for complaining of discrimination and hostile work environment constitute unlawful employment practices pursuant to Maryland law.

111.   That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her disability and legally protected activities.

112.   That the intentional retaliatory actions complained of above would tend to dissuade others from complaining of discrimination and harassment and were done with malice and/or reckless indifference to Plaintiff's rights.

113.   As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional and physical distress, attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT VIII**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**Americans with Disabilities Act of 1990, as amended**
**42 U.S.C. § 12101, *et seq.***

114.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

115.    From on or about November 18, 2019 to December 3, 2019, Plaintiff was harassed by

Ms. Accacio in various ways. Ms. Accacio significantly reduced Plaintiff's work hours; gave

scheduling preferences to other non-disabled nurses; denied Plaintiff numerous opportunities

to work overtime; spoke to her in a hostile manner when Plaintiff asked work-related

questions; and constantly harassed and ridiculed Plaintiff with inappropriate comments about

having to provide coverage for patients while Plaintiff was on medical leave due to her

disability-related health issues.

116.    On or about November 25, 2019, Plaintiff reported the harassment she suffered from Ms.

Accacio to Defendant's human resources department and to the Maryland Department of

Labor.

117.    On or about November 26, 2019, Defendant placed Plaintiff on a disciplinary suspension.

However, Plaintiff was not advised why she had been suspended. Plaintiff contacted Ms.

Accacio and the human resource department about the issue, but no one told her exactly why

she had been suspended.

118.    Between November 26, 2019 and December 3, 2019, Plaintiff spoke with the human

resource department, including Wendy Mayle (Non-disabled) about the reason for her

suspension. Plaintiff was informed that she was suspended for an alleged performance issue

concerning Plaintiff's calculation and administration of a medication. However, Plaintiff was

not responsible for the calculation and administration of the medication she was accused of

mishandling. The human resource department made it clear to Plaintiff that an investigation

was underway concerning the conduct Plaintiff was accused of.

119.    The subsequent hostile work environment, disciplinary suspension, and termination

among other actions as set forth in the above-referenced facts common to all counts

amounted to illegal retaliation.

120.    That the aforementioned acts of retaliation for complaining of discrimination and hostile

work environment constitute unlawful employment practices pursuant to the ADA.

121.    That the effect of the practices complained of above was to deprive Plaintiff of equal

employment opportunities and otherwise adversely affect her status as an employee based

upon her disability and legally protected activities.

122.    That the intentional retaliatory actions complained of above would tend to dissuade

others from complaining of discrimination and harassment and were done with malice and/or

reckless indifference to Plaintiff's rights.

123.    As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has

suffered lost wages and benefits, emotional and physical distress, attorney's fees and

litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Christina Vaccaro, Plaintiff, demands

judgment against Defendant, Monte Nido Roxbury Mills as follows:

a. Lost wages in the amount of $100,000;

b. Prejudgment and post judgment interest;

c. Neutral job reference;

d. Non-disparagement agreement;

e. Award attorney's fees and costs, including expert witness fees, as allowed by law;

f. Award past and future economic damages for all claims as allowed by law, in an

amount to be determined at trial, including, but not limited to, back pay and interest on same, lost

benefits, front pay, and special damages comprised in part of, but not limited to, past and future costs of borrowing funds to meet financial obligations, and past and future out-of-pocket pecuniary losses;

g. Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, and inconvenience;

h. Clean personnel record;

i. And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully submitted,

Paul V. Bennett, Esq., Federal Bar No. 10324
Bennett & Ellison, P.C.
2086 Generals Hwy., Suite 201
Annapolis, Maryland 21401
Telephone: (410) 886-7457
Facsimile: (410) 224-4590
Email: pbennett@belawpc.com

*Attorney for Plaintiff*

23